IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| WANDA COOPER, in her individual capacity and as Administrator of the Estate of the decedent AHMAUD ARBERY, | * * * * | |
| Plaintiff | * * | |
| v. | * * | Case Number: 2:21-cv-00020-LGW-BWC |
| TRAVIS McMICHAEL, et al., | * * | |
| Defendants | * | |

**CONSOLIDATED REPLY BRIEF OF DEFENDANTS GLYNN COUNTY AND MINSHEW IN SUPPORT OF THEIR MOTIONS TO DISMISS**

COME NOW Glynn County, Georgia, and Ricky Minshew, and file this consolidated reply brief in support of their respective motions to dismiss Plaintiff's Amended Complaint, showing the Court the following:

**Introduction**

In its principal brief, Glynn County showed that Plaintiff has not alleged a history of similar constitutional violations that could have served to put the County on notice of a need to train its officers on a subject relevant to the constitutional violation alleged by Plaintiff. Plaintiff's response is notable for what it does *not* include – namely, any argument that Plaintiff has met this standard. Instead, Plaintiff argues that she need only allege that the County was aware of "past constitutional violations" of *any* kind, regardless of their similarity or relevance to the violation alleged here. Plaintiff is mistaken, and her failure to meet the actual pleading standard – which requires her to

plead factual allegations identifying similar, substantiated prior constitutional violations – is fatal to her *Monell* claim against the County.

Additionally, the County showed that *any* claim Plaintiff could attempt to assert against it would fail, because the actions of the private Defendants cannot be imputed to the County for at least four separate reasons. In response, Plaintiff argues that one of those reasons is a "red herring," but does not address either of the other three – each of which is independently sufficient to defeat any claim Plaintiff might assert. Plaintiff has not asserted and cannot assert a viable claim against the County, and dismissal is warranted.

Likewise, Defendant Minshew showed in his principal brief that Plaintiff's allegations that he waited forty-five seconds to call for emergency medical services and did not personally perform first aid on Arbery fail to state a claim for deliberate indifference. Plaintiff's response conflates the standards applicable to persons in police custody and persons out of police custody, but the Amended Complaint ultimately fails to state a claim under either standard. Moreover, Plaintiff admits that the Eleventh Circuit has not identified a "bright line" beyond which a delay in calling for emergency services for a person in custody rises to the level of deliberate indifference – effectively admitting that Minshew would be entitled to qualified immunity even if Plaintiff had otherwise stated a claim against him. For both of these reasons, Minshew is entitled to dismissal.

## Argument and Citation of Authority

### *I. Plaintiff's Amended Complaint fails to state a claim against Glynn County.*

#### *A. Plaintiff's §1983 claim for failure to supervise, discipline, and train fails.*

##### 1. To state a claim under *Monell*, a plaintiff must plead specific factual allegations regarding multiple prior instances of substantially similar constitutional violations.

"To state a *Monell* claim, a plaintiff must allege facts showing: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016), citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir.2004) (punctuation omitted). "In limited circumstances, a local government's decision not to train certain employees to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015), quoting *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (alteration adopted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

In order to state a claim for failure to train and thereby avoid dismissal at the pleadings stage, a plaintiff must allege "a pattern of similar constitutional violations by untrained employees," and must supplement any assertion that the governmental employer was on notice of a need to train in a particular area with "facts [] to support

that conclusion." *Weiland*, 792 F.3d at 1328; *Sosa,* 2021 WL 4259153 at *15. Absent well-pleaded factual allegations regarding a history of *similar* constitutional violations, a pleading does not state a claim under *Monell* and should be dismissed.[1] *Weiland*, 792 F.3d at 1329-30.

In *Weiland*, the plaintiff alleged that he was shot, tasered, and beaten without provocation by deputies who responded to a call raising concerns about the plaintiff's mental health. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1316 (11th Cir. 2015). He filed a complaint asserting, *inter alia*, a *Monell* claim that the sheriff "did not adequately train or supervise [] Deputies in the use of appropriate and proportioned force" in detaining mentally ill citizens. *Id.* at 1318 (internal punctuation omitted and alteration adopted). In support of his claim, the plaintiff alleged: (1) that he had been "Baker Acted" by deputies on at least two earlier occasions; (2) that the Sheriff's Office was "familiar with [his] history of bipolar disorder;"and (3) that "[n]umerous police shootings of people with mental illnesses . . . in Palm Beach County" placed the sheriff's

---

[1] Although the Supreme Court has acknowledged the possibility that the need to train and supervise in a particular area could be "so obvious" that liability might attach even in the absence of previous constitutional violations caused by that failure to train, a plaintiff intending to rely on this narrow exception must "allege that the need for specialized training [on the relevant matter] is 'so obvious' that the failure to provide such training amounts to deliberate indifference." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015). Plaintiff's Amended Complaint contains no such allegation, offering only a conclusory statement that "the need for better training and supervision" – with respect to what, Plaintiff does not say – was "so obvious." Dkt. 110, ¶ 289. Given that Plaintiff does not identify the subject the allegedly deficient training should have addressed, the Court cannot possibly evaluate whether the need for training on that subject would have been "obvious."

office on notice of a need for specialized training. *Id.* at 1329. But these facts, the Eleventh Circuit held, were insufficient to support the plaintiff's "conclusory allegation" that the sheriff was on notice of a need to "promulgate, implement, and/or oversee" policies pertaining to the use of force on mentally ill persons. *Id.* at 1329. Because the plaintiff failed to plead *facts* establishing "a pattern of similar constitutional violations by employees of the Sheriff's Office that would put it on notice that its own training is inadequate," the complaint failed to state a claim and dismissal was appropriate. *Id.* at 1329 n. 21.

Similarly, in *Gurrera v. Palm Beach Cty. Sheriff's Off.*, the plaintiff attempted to plead a false-arrest claim against a sheriff under *Monell*. 657 F. App'x 886, 888 (11th Cir. 2016). He alleged (1) that the sheriff ratified the arresting deputy's misconduct by failing to discipline the deputy after the prosecution terminated in the plaintiff's favor; (2) that the sheriff and his employees "engaged in a pattern of conduct showing a willful disregard for citizens' rights;" (3) that the sheriff's office had "paid millions of dollars for civil rights violations;" (4) that the sheriff's office had a pattern and practice of obtaining coerced and false statements; (5) that the sheriff's office had "a pattern and practice of engaging in false arrests, imprisonment, [and] false prosecution;" and (6) that the sheriff had failed to correct these deficiencies. But such allegations, the Eleventh Circuit held, are properly "set aside" because they are conclusory. *Id.* at 893. Because the plaintiff had failed – at the pleadings stage – "to identify any examples beyond his

own [] of widespread unconstitutional conduct," the *Gurrera* court affirmed the trial court's dismissal of the case. *Id.*

Here, Plaintiff argues that "evidence of substantially similar incidents is not necessary at the pleading stage." Dkt. 151, p. 44. This is incorrect. *Weiland* controls this case, and unequivocally provides that a *Monell* plaintiff must allege facts establishing "a pattern of *similar constitutional violations* by untrained employees" in order to avoid dismissal at the pleadings stage.[2] *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (emphasis supplied). If any of the unreported District Court cases on which Plaintiff attempts to rely held otherwise, it would be erroneous. But the cases cited by Plaintiff do not actually support her position.

For example, in *Glover*, the plaintiff pleaded multiple "statistical and substantive examples of [the defendant city's] officers using excessive force while pursuing vehicles and shooting into them, injuring or killing the occupants." *Glover v. City of Atlanta*, No. 1:20-CV-04302-SDG, 2021 WL 3055267, at *4 (N.D. Ga. July 20, 2021). The defendant city argued that these examples were insufficient to have put the city on notice of a need to

---

[2] Plaintiff quarrels that many of the cases cited by the County in its principal brief were in a summary-judgment posture when they were decided. Dkt. 151, p. 44. The Eleventh Circuit has made clear that after *Twombly* and *Iqbal*, the factual allegations necessary to survive a motion to dismiss under *Monell* mirror the evidentiary showings necessary to survive a motion for summary judgment, and the court frequently cites such cases interchangeably. *See Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015), citing *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Nonetheless, because there is ample authority decided at the pleadings stage to support its showing that it is entitled to dismissal, the County cites only to cases decided at that stage in this portion of its brief.

train regarding "the precise circumstances" at issue in that case – "an officer using excessive force to stop the theft of his own unmarked, police vehicle in his presence." *Id.* The court rejected this attempt to define the conduct at issue as the use of force to stop a suspect fleeing in a stolen police vehicle, rather than simply the use of force to stop a fleeing suspect generally, holding that "precedent does not support narrowing the scope of similar conduct to the level of specificity Defendants suggest." *Id.* But the court recognized that "similar conduct" must be pleaded, noting in the same sentence that "[c]ertainly, to state a claim under *Monell*, Plaintiffs must allege more than a general apathy towards the use of excessive force." *Id.* Far from supporting Plaintiff's position that she is not required to allege prior instances of similar conduct at the pleadings stage, *Glover* reiterates that multiple statistical or substantive examples of substantially similar conduct are necessary to put a government entity on notice of a need to train.

Plaintiff does not mention *Weiland, Gurrera,* or any of the numerous other decisions from the Eleventh Circuit and from this Court setting forth the minimum pleading requirements for a claim under *Monell*. *See, e.g., Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 673 (11th Cir. 2016) (finding plaintiff's allegations of two incidents of excessive force insufficient to show "longstanding and widespread practice of encouraging excessive force," and affirming trial court grant of motion to dismiss *Monell* claim); *Grider v. Cook*, 522 F. App'x 544, 547–48 (11th Cir. 2013) (affirming dismissal at pleadings stage where plaintiff did not "provide any specific facts about any policy or custom that resulted in his alleged constitutional deprivation"); *Wainright*

*v. Gay*, No. CV 516-63, 2017 WL 1274992, at *4 (S.D. Ga. Mar. 31, 2017) (granting city's motion for judgment on pleadings where plaintiff failed "to allege any previous incidents which occurred which would have put the City on notice of constitutional violations.").

The response brief cites only one case from the Eleventh Circuit – *Hoefling v. City of Miami*– but, tellingly, offers no discussion of that case beyond a single quotation. Dkt. 151, p. 42. A substantive analysis of that case only confirms that Plaintiff has fallen far short of the applicable pleading standard here. In *Hoefling*, the plaintiff alleged that the City of Miami had seized and destroyed the sailboat on which he resided without providing notice or an opportunity to avoid the seizure. *Hoefling v. City of Miami*, 811 F.3d 1271, 1274 (11th Cir. 2016). He brought a *Monell* claim against the city, and the trial court – citing *Weiland* – granted the city's motion to dismiss. *Id.* at 1275. On appeal, the Eleventh Circuit noted that the plaintiff was required to "allege a policy, practice, or custom of the City which caused the seizure and destruction of his sailboat." *Id.* at 1280. It went on to hold that he had done so by pleading the following factual allegations: (1) that his own sailboat was seized and destroyed by the city without notice; (2) that the person who called to tell him that his sailboat was being seized stated that other boats were being seized by the city at the same time; (3) that the city had conducted similar sweeps during which it seized and destroyed boats without prior notice on other occasions; and (4) that the city referred to this process of seizing and destroying unsightly boats as its "cleanup program." These allegations, the Eleventh Circuit held,

were "sufficient to state a facially plausible municipal liability claim because they permit the reasonable inference that the City is liable for the misconduct alleged." *Id.* at 1281 (punctuation and citation omitted, alteration adopted).

Plaintiff's brief quotes this language from the conclusion of *Hoefling* – that the facts pleaded were sufficient to "permit the reasonable inference that the City is liable" – and suggests without elaboration that the same is true in this case. Dkt. 151, p. 42. But the facts pleaded here bear no resemblance to those found sufficient to support a *Monell* claim in *Hoefling*. The plaintiff in *Hoefling* alleged that his boat had been improperly seized and destroyed, and alleged facts showing that the City of Miami had improperly seized and destroyed numerous other boats as part of an official municipal program. In other words, the factual allegations supporting the *Monell* claim in *Hoefling* showed that the City was aware of, and in fact officially sanctioned, numerous prior constitutional violations that were essentially identical to the one claimed by the plaintiff. Here, Plaintiff alleges that her decedent was shot and killed by the private Defendants following interactions between the private Defendants and a Glynn County police officer – but attempts to support her *Monell* claim with allegations of general malfeasance and mismanagement in the Glynn County Police Department. Plaintiff's *Monell* allegations are substantively unrelated to the alleged constitutional violation, and *Hoefling* – which involved well-pleaded allegations of identical prior violations – does nothing to save Plaintiff's claim.

Plaintiff's argument that she need only plead "that the defendant had notice of past constitutional violations," regardless of whether those violations are related in any way to the violation she alleges, does not enjoy support in law. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015); Dkt. 151, p. 45. Plaintiff was required to plead factual allegations showing substantially similar prior constitutional violations sufficient to put the County on notice of a need for training in a specific subject area.

**2. Plaintiff has not met the requirement to plead specific factual allegations regarding multiple prior instances of substantially similar constitutional violations.**

The cornerstone of Plaintiff's opposition to the County's motion to dismiss her *Monell* claim is the erroneous assertion that she is not required to allege prior instances of similar constitutional violations. Plaintiff makes no attempt to argue, in the alternative, that she *has* pleaded "a pattern of similar constitutional violations" – effectively admitting that the prior conduct she does allege does not meet this requirement. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015); Dkt. 151, pp. 45-46. The viability of Plaintiff's *Monell* claim thus hinges entirely on whether she is correct about the applicable pleading standard, which, as shown above, she is not. Nonetheless, out of an abundance of caution, the County will show that the allegations Plaintiff includes regarding prior problems with the Glynn County Police Department do not allow her to state a claim under *Monell*.

a. Allegations regarding general malfeasance and shortcomings in the Glynn County Police Department.

This Court has considered, and rejected, the argument that allegations of general malfeasance by law enforcement are sufficient to state a claim under *Monell* for a failure to train regarding a specific matter. *McDaniel v. Smith*, No. CV 507-079, 2009 WL 10690737, at *16 (S.D. Ga. Oct. 29, 2009), rev'd in part on other grounds, 396 F. App'x 628 (11th Cir. 2010). In *McDaniel*, the plaintiff alleged that the defendant sheriff "had a custom or policy of misusing the Office of Sheriff for personal or political motives," and that this improper policy caused the plaintiff's rights to be violated when he was arrested. *Id.* at *16 (punctuation omitted). The Court held that "[w]hile malfeasance in office and misuse of authority is certainly egregious behavior, it is not, in and of itself, unconstitutional," and that such behavior consequently does not give rise to a claim under *Monell*. *Id. See also Callahan v. City of Hollywood*, No. 14-CIV-62960, 2015 WL 1191174, at *6 (S.D. Fla. Mar. 16, 2015) (holding that allegations that sheriff repeatedly failed to identify unlawful conduct by child protective investigators, failed to train and supervise those investigators regarding constitutional violations, and thereby "create[d] an atmosphere of lawlessness which encourages child protective investigators to break the law," were "too conclusory to support notice pleading"); *Phillips v. City of W. Palm Beach*, No. 18-CV-80172, 2018 WL 3586179, at *10 (S.D. Fla. July 26, 2018) (holding that allegations that county failed to investigate and discipline its officers, overlooked dishonest and abusive conduct by officers, permitted officers to frame people for crimes

they did not commit, and ignored citizen complaints about cover-ups were "legal conclusions couched as a factual allegation" and did not state a claim under *Monell*).

Plaintiff repeatedly points to an audit that found that the Glynn County Police Department's policies "were not reflective of contemporary police best practices, specifically citing concerns about 'accountability.'" Dkt. 151, pp. 8, 41. She also references a grand jury report, which she alleges detailed an "ongoing culture of cover-ups, failure to supervise, abuse of power, and lack of accountability" within the Police Department, as well as "a systemic failure to report complaints against police officers." *Id.* But these allegations, at most, accuse the Police Department of "malfeasance in office and misuse of authority," which this Court has acknowledged are not unconstitutional. *McDaniel v. Smith*, No. CV 507-079, 2009 WL 10690737, at *16 (S.D. Ga. Oct. 29, 2009), rev'd in part on other grounds, 396 F. App'x 628 (11th Cir. 2010). Moreover, Plaintiff's allegations regarding the audit and the grand jury report are vague, consisting entirely of generalized references to nonspecific misconduct that courts have held are "too conclusory to support notice pleading." These allegations do nothing to help Plaintiff meet *Weiland's* requirement to plead "a pattern of similar constitutional violations by employees of the [County] that would put it on notice that its [] training is inadequate." 792 F.3d 1313, 1329 n. 21 (11th Cir. 2015).

b. Allegations regarding specific prior incidents.

"[W]hen city policymakers are on actual or constructive notice that a *particular omission* in their training program causes city employees to violate citizens'

constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain *that program*." *Connick,* 563 U.S. at 61 (emphasis supplied). "The causation chain is an important aspect of *Monell* cases and the policies underlying *Monell* liability." *Vandiver v. Meriwether Cty., Georgia*, 325 F. Supp. 3d 1321, 1332 (N.D. Ga. 2018). Thus, even where a plaintiff alleges the existence of a policy or custom, she must also show that "the policy or custom in question actually caused the violation." *McClure v. Hyers*, No. 5:18-CV-32, 2020 WL 5649332, at *9 (S.D. Ga. Sept. 1, 2020), report and recommendation adopted, No. 5:18-CV-32, 2020 WL 5648203 (S.D. Ga. Sept. 22, 2020), citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A plaintiff may not simply allege that her rights were violated, allege the existence of a policy or custom on the part of the defendant, "and then conclude[] that all [of the defendant's] acts and omissions must be a result of this policy." *Id.* at *9. Rather, the plaintiff must show – at the pleadings stage – "that the alleged policy or custom . . . was the 'moving force' behind" the defendant's actions that violated her rights. *Id.*

Buried among conclusory allegations regarding general misconduct in Plaintiff's Amended Complaint is a solitary acknowledgment of the true essence of Plaintiff's failure-to-train claim: Plaintiff alleges that "Glynn County Police Department failed to train police officers about deputization of private citizens." Dkt. 110, ¶ 283. But Plaintiff offers no allegation that anyone other than Arbery has suffered a constitutional violation as a result of a failure to train officers "about deputization of private citizens." Rather, all of the specific prior incidents of allegedly unconstitutional conduct identified

in the Amended Complaint concern, according to Plaintiff, "cover-up, corruption, and lack of accountability." Dkt. 1, ¶ 194. For the reasons set forth in the County's principal brief – which Plaintiff has not effectively refuted – the allegations regarding these prior incidents are insufficient to establish that *any* constitutional violation has occurred.[3] Dkt. 67, pp. 27-28. But more importantly, even if the four dissimilar and unsubstantiated incidents identified by Plaintiff could potentially be used to support *some* claim for failure to train, they would not support the specific failure-to-train claim alleged here.

To the extent that the two use-of-force incidents, one decision not to make an arrest for assault, and one incident of inappropriate sexual conduct by an officer alleged by Plaintiff could be distilled into an overarching policy of some kind – which the County strongly disputes – that policy would have no relevance to Plaintiff's claims, which allege constitutional violations stemming from the deputization of private citizens. Dkt. 110, ¶ 283. None of Plaintiff's other allegations about prior incidents of alleged misconduct are connected in any way to her single, bare statement that Glynn County "failed to train police officers about the deputization of private citizens." *Id.* She has failed to plead that Glynn County knew of, and disregarded, a need to provide

---

[3] In her brief, Plaintiff classifies these incidents as "constitutional violations or other reckless and illegal conduct," and as "police misconduct." Dkt. 151, p. 42. She does not identify which of them, if any, she believes actually rises to the level of a constitutional violation. *Id.* But as this Court has noted, only constitutional violations – not general malfeasance or abuse of authority – are relevant to establishing a custom, practice, or failure to train under *Monell*. *McDaniel v. Smith*, No. CV 507-079, 2009 WL 10690737, at *16 (S.D. Ga. Oct. 29, 2009), rev'd in part on other grounds, 396 F. App'x 628 (11th Cir. 2010).

training on that subject, and her claim consequently fails. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015).

*B. The acts of the private defendants cannot be imputed to Glynn County under any theory of liability.*

In its principal brief, Glynn County showed that Plaintiff could not state a claim against it under any theory of liability because there is no basis upon which to impute the actions of the private Defendants to the County. Dkt. 145, pp. 14-25. Specifically, the County showed that Defendant Rash could not have deputized the private Defendants as a matter of law; that Rash likewise could not have conferred authority on the private Defendants by some informal means short of official deputization; that even if such a deputization were theoretically possible, that none occurred here; and that Plaintiff did not plead the requisite causal connection between any such deputization and the eventual violation of the rights of Plaintiff's decedent. *Id.* In response, Plaintiff argues that the deputization argument is "a red herring" – pointedly ignoring the fact that "deputization" is at issue in this case because the Amended Complaint raises it *nineteen times*. Dkt. 110. Plaintiff's *Monell* claim, specifically, contains a dozen mentions of deputization, and the essence of that claim is the allegation that the "Glynn County Police Department failed to train police officers about deputization of private citizens." Dkt. 110, ¶ 283. Plaintiff's attempts to steer the Court's analysis away from the question of "deputization" – the concept on which the Amended Complaint relies in attempting to set forth a *Monell* claim against the County – are a tacit admission that the claim is not viable.

Moreover, Plaintiff entirely fails to address any of the County's other showings regarding its lack of liability for the actions of the private Defendants. Of particular note, the County showed that even if Rash's interactions with the private Defendants could have imbued subsequent actions by those Defendants with governmental character – a legal impossibility – the Amended Complaint does not plead the requisite causal connection between Rash's actions and the violation of Arbery's rights. Dkt. 145, pp. 20-25. Plaintiff offers no response to this showing; the short discussion of causation that does appear in the response brief pertains only to state-law claims against Defendant Rash. For the reasons set forth in the County's principal brief, the majority of which have not been refuted or even responded to, Plaintiff's claims against the County fail for each of these additional reasons.[4]

## *II. Plaintiff's Amended Complaint fails to state a claim against Defendant Minshew.*

### *A. Plaintiff's claims against Minshew are not properly before the Court.*

Defendant Minshew moved for dismissal on the ground that the Amended Complaint is not properly before the Court, showing that Plaintiff amended without

---

[4] The County further notes that "[t]here can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017). As noted in the County's principal brief, Plaintiff's *Monell* claim is predicated solely on the actions of Defendant Rash; Plaintiff does not seek to impose liability on the County for the actions of Defendant Minshew or any other County employees. Dkt. 145, p. 11, n. 6. For the reasons set forth in the Motion to Dismiss and reply brief in support thereof filed by Defendant Rash, Rash has not committed a violation for which the County could potentially be held liable. Dkt. 142; Dkt. 157. For this additional reason, Plaintiff's *Monell* claim fails.

seeking or obtaining leave to do so. Dkt. 124, pp. 5-8. Glynn County filed a motion to strike on similar grounds. Dkt. 114. Minshew further explained that suit was not filed against him within the statute of limitations, and that he would be prejudiced by the loss of his statute-of-limitations defense if the Court were to treat the improperly filed Amended Complaint as valid. Dkt. 124, pp. 8-10.

The Magistrate Judge subsequently agreed with Glynn County and Minshew that the Amended Complaint was not properly filed, but granted Plaintiff's motion for leave to amend *nunc pro tunc*. Dkt. 128. In so doing, the Magistrate Judge erroneously stated that Defendant Minshew had not yet appeared before the Court, and that the Court had not been presented with an argument that Minshew would be prejudiced if the untimely pleading were retroactively treated as valid. Dkt. 128, p. 128. Glynn County has filed objections to the Magistrate Judge's order, which remain pending. Dkt. 132.

Plaintiff, in response to Minshew's Motion to Dismiss, does not acknowledge or discuss the procedural issues raised by that motion. But the Magistrate Judge's order, which inaccurately indicated that Minshew had not appeared or made any arguments on his own behalf in opposition to the filing of the Amended Complaint, leaves no question that the procedural issues raised by the untimely filing – as they pertain to Minshew – have yet to be addressed. For the reasons set forth in Minshew's principal brief, and in Glynn County's objections to the Magistrate Judge's order, Minshew will be unfairly prejudiced by the loss of his statute-of-limitations defense if the Amended

Complaint is treated as though it were properly filed on the day that it was improperly filed without leave of Court. For this reason alone, the Amended Complaint should be dismissed with respect to Minshew. Additionally, as noted in Minshew and Glynn County's prior submissions, Plaintiff has never explained why the claims against Minshew were not included in the original pleading, or why fourteen months elapsed after the facts underlying the claims against Minshew came to light before Plaintiff attempted to insert those facts into the operative pleading. Leave to amend with respect to Minshew would have been properly denied even if it were timely requested, and for this second and independently sufficient reason, Plaintiff's claims against Minshew are properly dismissed.

*B. Arbery was not in police custody at the time Minshew encountered him.*

Plaintiff – in a nearly page-long passage that cites no legal authority – argues that Arbery was "in police custody" at the time Minshew arrived at the scene of the shooting. Dkt. 151, pp. 34-35. Interestingly, Plaintiff's choice of language betrays the weakness of this position; the "officers" whom Plaintiff claims had taken Arbery into custody are referred to throughout the response brief as the "Private Defendants." Plaintiff nonetheless argues that the "Private Defendants" were "acting under color of law with authorization and encouragement from the Glynn County Police Department" when Travis McMichael shot Arbery. Dkt. 151, p. 34. Glynn County showed in its Motion to Dismiss that this argument fails as a matter of law for at least four reasons –

and, as noted above, Plaintiff has failed to respond to three of the County's four showings. Dkt. 145, pp. 14-25.

Plaintiff's response brief does obliquely touch on the question of causation, but in so doing, only confirms that the Amended Complaint does not allege a causal connection between the actions of law enforcement and the Private Defendants sufficient to support a finding that Arbery was in custody. Assuming for the sake of argument that Defendant Rash could and did confer authority on the private Defendants to act on behalf of the Glynn County Police Department in addressing trespasses at Larry English's construction site – which he could not, and did not – Plaintiff has not pleaded a plausible connection between that conferral of authority and Arbery's death. Plaintiff argues in favor of an inference "that Defendant Rash reached an understanding with the Private Defendants that they would unlawfully seize Arbery . . . by force or threat of force the next time they saw him." Dkt. 151, p. 15. But the allegations of the Amended Complaint do not allow such an inference to be drawn.

Plaintiff alleges that on the day Travis McMichael shot Arbery, none of the Private Defendants saw Arbery at the construction site that was the sole focus of Rash's interactions with the Private Defendants. Dkt. 110, ¶¶ 88, 101. Instead, Plaintiff alleges, Gregory McMichael saw Arbery run by his house and had a "'gut feeling' that Ahmaud was responsible for previous thefts in the neighborhood" – and this "gut feeling" about thefts was the reason that McMichael decided to pursue Arbery. Dkt. 110, ¶¶ 1, 93. But Plaintiff does not allege that these "previous thefts" occurred at the construction site,

and in fact pleads that McMichael was aware that Arbery never took or damaged anything from English's property. Dkt. 110, ¶ 90. The Amended Complaint alleges that McMichael pursued Arbery based on a suspicion entirely unrelated to the construction site, and thus entirely unrelated to any interaction McMichael might have had with Defendant Rash. Plaintiff's failure to address Glynn County's showing in its principal brief regarding causation, beyond suggesting an inference that is not supported by the facts pleaded in the Amended Complaint, precludes any finding that the private Defendants were acting under color of law when Travis McMichael shot Arbery.

Moreover, Plaintiff's tangential reference to causation comes not in response to the County's showing that it cannot be held liable for the conduct of the private Defendants, but in response to *Defendant Minshew's* showing that Arbery was not in police custody following the shooting. Even if an inference that the private Defendants were acting on behalf of Glynn County when Travis McMichael shot Arbery could reasonably be drawn, which it cannot, any inference that Minshew knew this to be the case would be a bridge too far. The Amended Complaint does not identify anyone affiliated with the Glynn County Police Department, other than Defendant Rash, who is alleged to have known about a purported authorization of the private Defendants to work on behalf of the Department. It certainly does not allege that Minshew knew, or had reason to know, that the private Defendants were acting on behalf of the County.

The "subjective component" of a claim for deliberate indifference is satisfied where a plaintiff shows that an officer "kn[ew] of and disregard[ed] an excessive risk to

[the] health or safety" of a person in custody. *Swain v. Junior*, 958 F.3d 1081, 1088–89 (11th Cir. 2020). "Deliberate indifference requires the defendant to have a subjective state of mind more blameworthy than negligence." *Id.* (punctuation and citation omitted). Plaintiff's brief does not explain how Defendant Minshew could possibly have the requisite subjective knowledge to act with deliberate indifference toward the rights of a person whom he had no reason to believe was in police custody. The Amended Complaint is devoid of any allegations suggesting that Minshew could have perceived the situation when he arrived on scene as anything other than a shooting that occurred between private citizens, to which a deliberate-indifference standard is inapplicable. Arbery was not in police custody when Minshew encountered him, and even if he were, Minshew would not have known this was the case. Plaintiff's claim against Minshew is properly evaluated under the "shocks-the-conscience" standard applicable to persons at liberty, not the deliberate-indifference standard applicable to detainees[5]

[5] Defendant Minshew showed in his principal brief that even under a deliberate-indifference framework, he would not have been required to personally provide first aid to Arbery and would be entitled to qualified immunity. Dkt. 124, pp. 13-14. Plaintiff argues that "[c]ourts have found officers deliberately indifferent for a failure to provide medical care even in cases where officers promptly summoned medical care." – but cites only cases from the Sixth Circuit and from other District Courts in support of this "rule." Dkt. 151, pp. 37-38. "[N]either the Supreme Court, Eleventh Circuit, nor the Georgia Supreme Court" – the only courts that can establish the law in this Court for qualified immunity purposes – "have ever distinctively held that an officer must personally render aid to an injured individual, in addition to calling for professional medical help." *Peacock v. Smith*, No. 5:18-CV-00284-TES, 2018 WL 5649899, at *7 (M.D. Ga. Oct. 31, 2018).

*C. The Amended Complaint does not set forth allegations that "shock the conscience" with respect to Minshew.*

Plaintiff's principal argument in support of her claim against Minshew is that a deliberate-indifference framework applies; the "shocks-the-conscience" framework that actually governs the claim is mentioned only briefly. Plaintiff, citing a single unreported case from the Middle District of Georgia, argues that the allegations of the Amended Complaint "plausibly suggest that Defendant Minshew intended to cause Arbery harm because he had the knowledge and training to render Arbery aid" and did not do so. Dkt. 151, p. 38. Absent from the response brief is any discussion of the controlling authority set forth by Minshew, which establishes that an officer's acts rise to the level of intent to cause harm only where an officer *actively thwarts* attempts by others to provide medical assistance to a person in need. *Waldron v. Spicher*, 954 F.3d 1297, 1311 (11th Cir. 2020).

Plaintiff claims that the Middle District, in the unreported case cited by Plaintiff, "found allegations of similar behavior [to Minshew's] sufficient to shock the conscience and state a due process claim." Dkt. 151, p. 38, citing *Olson v. Barrett*, No. 6:13-cv-1889-Orl-40KRS, 2015 WL 1277933, at *11 (M.D. Fla. Mar. 20, 2015). What Plaintiff fails to mention is that all of the officers in *Olson* against whom the plaintiff was found to have stated a claim "chose to prevent bystanders, including a medically qualified and trained nurse, from providing first aid," and "elected to cancel emergency assistance." 2015 WL 1277933 at *10. Minshew is not alleged to have engaged in any similar conduct. As a matter of law, the conduct alleged on the part of Defendant Minshew does not "shock

the conscience," and the Amended Complaint would not state a claim against Minshew for violation of Arbery's substantive due process rights even if one had otherwise been properly pleaded.

*D. Minshew is entitled to qualified immunity.*

In arguing that Minshew is not entitled to qualified immunity, Plaintiff relies on *Valderrama v. Rousseau* for the rule that it is "clearly established that when officers intentionally delay seeking treatment for a life-threatening injury, they act with deliberate indifference." Dkt. 151, p. 39, citing 780 F.3d 1108, 1122 (11th Cir. 2015). But as Minshew noted in his principal brief, *Valderrama* establishes that an officer's delay of "a few minutes" in seeking care for life-threatening injuries of a person in custody "can constitute deliberate indifference." *Id.* It does not establish that a delay as brief as forty-five seconds can rise to that level – even in cases where deliberate indifference is the applicable standard. *Id.*

In a moment of incredible candor, Plaintiff admits that "Plaintiff is unaware of any court in the Eleventh Circuit that has set out a bright line rule establishing the length of time an officer must delay calling for medical assistance before that officer can be considered deliberately indifferent." Dkt. 151, p. 38, n. 8. Of course, the "clearly established" standard "demands that a bright line be crossed." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* Not only has Plaintiff not identified controlling case

law establishing that Minshew crossed a bright line by declining to personally provide first aid to Arbery and waiting forty-five seconds to summon medical assistance; at least as to the latter allegation, Plaintiff has confirmed that no such case law exists. Even under the higher deliberate indifference standard, Minshew would be entitled to qualified immunity.

Nor has Plaintiff pleaded sufficient facts to preclude qualified immunity under the shocks-the-conscience standard that actually applies to her claim against Minshew. As noted above, the only case relied on by Plaintiff in support of her argument on this issue is factually distinguishable, unreported, and from the Middle District of Georgia. Only the United States Supreme Court, Eleventh Circuit Court of Appeals, and Georgia Supreme Court can clearly establish the law for purposes of qualified immunity, and Plaintiff has not attempted to identify authority from any of those courts suggesting that the facts alleged with respect to Minshew rise to the level of conscience-shocking. *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013). Minshew is likewise entitled to qualified immunity under this standard.

**Conclusion**

For the foregoing reasons, as well as the reasons set forth in their respective principal briefs, Defendants Glynn County and Minshew respectfully request that the Court dismiss all claims asserted against them in this action.

This nineteenth day of October, 2022.

/s/Richard K. Strickland
Richard K. Strickland
Georgia Bar No. 687830

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar No. 115145

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com
ehancock@brbcsw.com

**Attorneys for Defendants Glynn County and Minshew**